**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRAIG BARBER<br>    & MELISSA BARBER<br><br>    Plaintiffs,<br><br>    v.<br><br>BAC HOME LOANS SERVICING, L.P.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**Introduction**

1.    The action is brought by Plaintiffs Craig and Melissa Barber, a married couple with two young children, against BAC Home Loans Servicing, L.P. ("BAC"), the mortgage company that services a mortgage on their home, for breaching the terms of their mortgage contract, and for engaging in abusive, deceptive and unfair debt collection practices prohibited by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., the New York Deceptive Practices Act, and N.Y. Gen. Bus. L. § 349, and state common law.

2.    Defendant BAC's refusal to honor a Modification Agreement entered into between Plaintiff Craig Barber and their previous mortgage servicer has caused the plaintiffs to default on their mortgage payments.  Despite the fact that Plaintiffs Craig and Melissa Barber are ready, willing, and able to provide the defendant with mortgage payments for

the months of February of 2010 through to the present, Defendant BAC refuses to apply the plaintiffs' payments and has threatened to foreclose on their property.

## I.  JURISDICTION AND VENUE

3.      This court has jurisdiction over plaintiffs' federal claims asserted against the defendant in this action pursuant to 28 U.S.C. § 1331, § 1337, and 15 U.S.C. § 1692k(d).

4.      Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. § 2201 and § 2202.

5.      This court has supplemental jurisdiction of plaintiffs' claims brought under New York Gen. Bus. Law § 349 and New York state common law pursuant to 28 U.S.C. § 1367(a), as these state law claims arise out of a common nucleus of operative facts.

6.      Plaintiffs' request for injunctive relief against defendant's deceptive practices is authorized by Gen. Bus. L. § 349(h).

7.      Plaintiffs seek actual and/or statutory damages as well as punitive damages pursuant to 15 U.S.C. § 1692k, Gen. Bus. L. § 349(h).

8.      Venue in this court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to plaintiffs' claims occurred in the Western District of New York.

## II.  PARTIES

### A. PLAINTIFFS

9.      Plaintiffs Craig Barber and Melissa Barber are a married couple residing at 57 Agar

Avenue, Henrietta, New York, with their two children, Hunter, age 12, and Jessica, age 2.

10.     Plaintiff Craig Barber is and was at all times material to this Complaint a resident of the

Town of Henrietta, Monroe County, New York.

11.     Plaintiff Melissa Barber is and was at all times relevant to this Complaint a resident of the

Town of Henrietta, Monroe County, New York.

12.     Plaintiff Craig Barber is employed as a Mechanical Equipment Operator with the Town

of Henrietta and Plaintiff Melissa Barber is a 2nd grade school teacher with the Rochester

City School District.

13.     Plaintiffs are natural persons obligated on, or allegedly obligated on, a debt and are

"consumers" as defined under the Fair Debt Collection Practices Act, 15 U.S.C. §

1692a(3).

14.     Plaintiffs' alleged "debt" is an obligation for money, goods, insurance, or services for

primarily personal, family, or household purposes, as defined under the FDCPA, 15

U.S.C. § 1692a(5).

### B. DEFENDANT

15.     Defendant BAC is a foreign limited partnership, located at 4500 Park Granada,

Calabasas, California 91302.

16.     At all times relevant to this action, Defendant BAC regularly transacted business in the

State of New York.

17.    Defendant BAC is a "debt collector" of the plaintiffs' alleged "debt" as those terms are defined in the FDCPA, 15 U.S.C. § 1692a.

18.    At all relevant times, Neill Hernandez was an authorized agent of Defendant BAC.

## III. FACTUAL ALLEGATIONS

19.    In March 2003, Plaintiff Craig Barber, as mortgagor, entered into a Federal Housing Administration (FHA) mortgage contract to purchase a HUD Home located at 57 Agar Avenue, Henrietta, New York.

20.    In November 2004, Plaintiff Craig Barber, as mortgagor, refinanced the mortgage for the property at 57 Agar Avenue, Henrietta, New York with Ameriquest Mortgage ("Ameriquest"), as mortgagee, in the amount of eighty-six thousand, two hundred and fifty dollars and zero cents ($86,250.00).

21.    In November 2004, Ameriquest assigned and transferred the plaintiffs' mortgage contract to JP Morgan Chase Bank ("Chase") as trustee for GMAC/Residential Funding Corporation ("the note holder").

22.    The plaintiffs' mortgage contract was assigned to Wilshire Credit Corporation ("Wilshire") for the purpose of servicing the plaintiffs' mortgage contract.

23.    On or around July 1, 2008, Plaintiff Craig Barber owed ninety-five thousand and nineteen dollars and eighteen cents ($95,019.18) on his mortgage contract.

24.    In July 2008, Plaintiff Craig Barber, entered into a written Loan Modification Agreement ("2008 Loan Modification Agreement") with Wilshire, acting as agent for the note holder.

25.   A true and accurate copy of the 2008 Loan Modification Agreement is attached hereto as Exhibit A.

26.   Under the 2008 Loan Modification Agreement, the amount of debt owed by Plaintiff Craig Barber was "reduced by eighteen thousand, eight hundred and sixteen dollar and thirty-nine cents ($18,816.39)"; thus reducing the amount of principal and interest owed by Plaintiff Craig Barber "from ninety-five thousand, nineteen dollars and eighteen cents ($95,019.18) to eight-four thousand, five hundred and eighty-two dollars and twenty-eight cents ($84, 582.28)."

27.   As part of the 2008 Loan Modification Agreement, the plaintiffs agreed to make monthly escrow payments of three hundred and sixty-one dollars and thirty-nine cents ($361.39) in addition to their principal and interest obligation.

28.   Under the 2008 Loan Modification Agreement, Plaintiffs were to make regular monthly mortgage payments totaling eight hundred and ninety-three dollars and eighty-six cents ($893.86) beginning on August 1, 2008.

29.   Plaintiff Craig Barber signed the 2008 Loan Modification Agreement on or around July 16, 2008.

30.   Chris Tufts, agent for Wilshire Credit Corporation, signed the 2008 Loan Modification Agreement thereafter.

31.   Upon information and belief, in November of 2009, the plaintiffs' mortgage servicing contract was transferred from Wilshire to Defendant BAC, for the purpose of servicing the plaintiffs' mortgage contract, and collecting mortgage payments from the plaintiffs.

32.    In January 2010, the plaintiffs received a letter from Wilshire, dated January 13, 2010, informing the plaintiffs that the servicing of their mortgage would be assigned, sold or transferred from Wilshire to Defendant BAC effective February 1, 2010.

33.    The January 13th notice advised the plaintiffs that "[t]he assignment, sale or transfer of the servicing of [the plaintiffs'] mortgage loan does not affect any terms or condition of [the plaintiffs'] loan, other than terms directly related to the servicing of [the plaintiffs'] loan."

34.    The plaintiffs paid each of their monthly mortgage payments to Wilshire according to the 2008 Loan Modification Agreement through January 2010.

35.    By late February 2010, the plaintiffs still had not received any information or instructions from Defendant BAC about how the plaintiffs should submit their mortgage payments to Defendant BAC.

36.    In February 2010, the plaintiffs contacted Defendant BAC by telephone inquiring how they should submit their monthly mortgage payments.

37.    During their telephone conversation, a customer service representative at BAC advised the plaintiffs to use their Wilshire account number when submitting monthly mortgage payments, and provided the plaintiffs with BAC's address for sending their mortgage payments.

38.    The BAC representative also advised the plaintiffs that BAC would accept weekly payments of two hundred and thirty-one dollars and fifty cents ($231.50) from the plaintiffs.

39.    As instructed, on March 5, 2010, Plaintiffs sent their February 2010 mortgage payment in the amount of $925.03 to the address provided by Defendant BAC.

40.     Plaintiffs then set up automatic, weekly payments of $231.50 electronically sent to Defendant BAC through their bank, ESL Federal Credit Union.

41.     On March 12, 2010 the plaintiffs sent a weekly mortgage payment of $231.50 to Defendant BAC through their bank's automatic payment system.

42.     On March 19, 2010, the plaintiffs submitted another payment of $231.50 to the defendant.

43.     On March 26, 2010, the defendant returned the plaintiffs' March 5, 2010 mortgage payment to the plaintiffs' bank, indicating that "no such account" existed.

44.     On March 28, 2010, the defendant returned the plaintiffs' March 12, 2010 mortgage payment to the plaintiffs' bank, indicating that "no such account" existed.

45.     On April 4, 2010, the defendant returned the plaintiffs' March 19, 2010 mortgage payment to the plaintiffs' bank, indicating that "no such account" existed.

46.     Around April 12, 2010, the plaintiffs received a letter from Defendant BAC dated February 1, 2010 indicating that as of November 18, 2010, the plaintiffs owed ninety-two thousand, eight hundred and eighty-nine dollars and thirty nine cents ($92,889.39) on the unpaid balance of their mortgage.

47.     On April 19, 2010, Neill Hernandez, a loan servicing specialist at BAC, advised the plaintiffs, through the plaintiffs' attorney, by electronic mail, that Defendant BAC's computer records indicated that as of April 19th, the plaintiffs' file was five months due and in the foreclosure process.

48.     On April 30, 2010, Neill Hernandez advised the plaintiffs, through the plaintiffs' attorney, by electronic mail, that Defendant BAC's computer records indicated that as of

April 30, 2010, the unpaid principal balance of the plaintiffs' mortgage was $82,762.02, with an interest rate of six percent.

49.     On April 30, 2010, Mr. Hernandez further indicated that according to BAC's computer records, at the time the mortgage contract was transferred to Defendant BAC from Wilshire, the mortgage was five months delinquent.

50.     Mr. Hernandez also noted that the plaintiffs' mortgage contract was transferred to Defendant BAC prior to Wilshire finalizing the "backend" of the modification process.

51.     On April 30, 2010, the plaintiffs, through their attorney, by electronic mail, provided Defendant BAC with a signed copy of the 2008 Loan Modification Agreement between Plaintiff Craig Barber and Wilshire.

52.     Additionally, the plaintiffs, through their attorney, disputed being five months delinquent on mortgage payments.

53.     Later on April 30, 2010, Mr. Hernandez advised the plaintiffs, through plaintiffs' attorney, by electronic mail, that Defendant BAC was refusing to acknowledge the 2008 Loan Modification Agreement because BAC's computer records indicated that the plaintiffs' mortgage contract was transferred to BAC prior to Wilshire finalizing of the 2008 Loan Modification Agreement.

54.     On April 30, 2010, Defendant BAC demanded that the plaintiffs negotiate a new mortgage modification agreement with BAC.

55.     In June, 2010, Defendant BAC sent the plaintiffs a letter dated June 5, 2010, indicating that "If your loan is in foreclosure, a scheduled foreclosure sale will be conducted by Bank of America."

56. Since Defendant BAC is refusing to accept the plaintiffs' mortgage payments, Plaintiffs have deposited the amount of their mortgage payments for the months of February 2010 to the present into plaintiffs' attorney's client trust account.

57. Plaintiffs are ready, willing, and able to provide BAC with all mortgage payments for the months of February of 2010 through to present.

### III. CLAIMS FOR RELIEF

### FIRST CLAIM
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

58. The terms of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., apply to all communications, directly or indirectly, from or on behalf of debt collectors seeking to collect consumer debts.

59. In refusing to accept plaintiffs' mortgage payments and apply said payments to the principal, interest, and escrow on plaintiffs' mortgage account, Defendant BAC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq*., by

    a. Using false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and by

    b. Attempting to collect an amount not authorized by the agreement, in violation of 15 U.S.C. § 1692f(1); and by

    c. Causing charges to be made to the consumer, in violation of 15 U.S.C. § 1692f(5); and by

    d. Using any unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

60.    In claiming that plaintiffs were delinquent on their mortgage Defendant BAC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq*., by

    a.    Using false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and by

    b.    Using any unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

61.    In sending the plaintiffs' attorney the April 19, 2010 electronic message,  indicating that the plaintiffs' file was in the foreclosure process and then sending the June 5, 2010 letter stating, "If your loan is in foreclosure, a scheduled foreclosure sale will be conducted by Bank of America," Defendant BAC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et seq*., by

    a.    Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d; and by

    b.    Engaging in unfair or unconscionable means to collect or attempt to collect the alleged debt owed by the defendant to the plaintiffs, prohibited by 15 U.S.C. § 1692f; and by

    c.    Attempting to collect property not authorized by the agreement or permitted by law, prohibited by 15 U.S.C. § 1692f(1); and by

    d.    Threatening to unlawfully repossess the plaintiff's property, prohibited by 15 U.S.C. § 1692f(6).

62.    In not sending the plaintiffs a thirty day validation notice until after April 1, 2010, Defendant BAC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, *et*

*seq.*, by failing to send the consumer a 30-day validation notice within five days of the initial communication, as required by 15 U.S.C. § 1692f.

63.    As a result of the defendant's conduct in violating the Fair Debt Collection Practices Act, the plaintiffs have suffered actual damages.

## SECOND CLAIM
## VIOLATIONS OF THE DECEPTIVE PRACTICES ACT

64.    Defendant BAC violated the Deceptive Practices Act, Gen. Bus. Law § 349 by engaging in consumer oriented acts and practices which were misleading in a material way, unfair, deceptive, and contrary to public policy and generally recognized standards of business, including but not limited to:

   a.    Falsely claiming that 2008 Loan Modification Agreement between Wilshire and Plaintiffs was void; and by

   b.    Falsely claiming that plaintiffs defaulted on their mortgage payments; and by

   c.    Failing to apply plaintiffs' payments to their mortgage payments based upon the false assertion that the plaintiffs' mortgage was in default thereby causing the plaintiffs to default on their loan obligation.

65.    Defendant BAC willingly and knowingly violated the Deceptive Practices Act, Gen. Bus. Law § 349.

66.    Defendant's conduct has not only caused injury to the plaintiffs, but has the potential to harm the public at large. In essence, by providing inaccurate, deceptive and misleading information, the defendants are causing an unnecessary hardship to mortgage holders by increasing the risk of foreclosure to homeowners.

67.  Defendant's actions toward the plaintiffs are part of a pattern and practice of the defendants making it extremely difficult for mortgage holders at risk of foreclosure to avoid foreclosure.

68.  As a result of the defendant's conduct in violating the Deceptive Practices Act, Gen. Bus. Law § 349, the plaintiffs have suffered actual damages.

**THIRD CLAIM**
**BREACH OF CONTRACT**

69.  Wilshire, as servicer for the mortgagee, had actual authority to contract on behalf of Chase as trustee for GMAC/ Residential Funding Corporation, the note holder. Therefore, the 2008 Loan Modification Agreement entered into by Wilshire on behalf of the note holder is enforceable by the plaintiffs on the note holder and Defendant BAC, as the current servicer of the mortgagee.

70.  Consequently, Defendant BAC breached the mortgage contract in at least the following ways:

  a.  By refusing to acknowledge the plaintiffs' 2008 Loan Modification Agreement;

  b.  By refusing the plaintiffs' mortgage payments for the months of February 2010 and March 2010;

  c.  By demanding that the plaintiffs enter into a new mortgage modification agreement with Defendant BAC;

  d.  By declaring the plaintiffs to be in default of the mortgage contract when no such default exists.

71.  Defendant's breach of contract as alleged herein is of such wanton dishonesty as to imply a criminal indifference to civil obligations.

72.   Defendant's conduct towards the plaintiffs is part of a pattern directed at the public generally.

73.   As a result of the defendant's breach of contract, defendants are liable to the plaintiffs for actual and punitive damages.

**FOURTH CLAIM**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

74.   The mortgage contract between the plaintiffs and the defendant contains implied covenants by which Defendant BAC promised that it would deal with the plaintiffs fairly and in good faith and would do nothing that would have the effect of destroying or injuring the plaintiffs' rights to receive the fruits of their contracts; that is, in the mortgage contract there exist implied covenants of good faith and fair dealing.

75.   Defendant BAC breached the implied covenants of good faith and fair dealing in the mortgage contract in at lease the following ways:

   a.   By unfairly refusing to accept the 2008 Loan Modification Agreement between Plaintiff Craig Barber and Wilshire Credit Corporation,

   b.   By refusing the plaintiffs' mortgage payments for the months of February 2010 and March 2010;

   c.   By demanding that the plaintiffs enter into a new mortgage modification agreement with Defendant BAC; and

   d.   By declaring the plaintiffs to be in default of the mortgage contract when no such default exists; and

   e.   By threatening the plaintiffs with foreclosure on June 5, 2010.

76.   As a direct and proximate result of the defendant's breach of the covenants of good faith and fair dealing in the mortgage contract with the plaintiffs, the plaintiffs have been

injured in their property and have suffered emotional distress and other consequential damages.

**FIFTH CLAIM**
**NEGLIGENCE**

77.    In or around November of 2009, Chase as trustee for GMAC/ Residential Funding Corporation, the note holder, assigned Defendant BAC, the assignee, as agent of the mortgagee, with the duty of servicing the plaintiffs' mortgage contract and more particularly with collecting mortgage payments from the plaintiffs.

78.    Defendant BAC has breached its duty to the plaintiffs in at least the following ways:

    a.    By refusing to accept the plaintiffs' mortgage payments;

    b.    By providing inaccurate information about how the plaintiffs can submit mortgage payments to the defendants.

    c.    By attempting to collect an amount not authorized by the agreement.

79.    As a result of the defendant's breach, the plaintiffs factually and proximately sustained financial and emotional injuries.

80.    The injuries resulting to the plaintiffs were caused by the negligence and carelessness of the defendant.

**SIXTH CLAIM**
**PRIMA FACIE TORT**

81.    Defendant BAC intentionally harmed the plaintiffs by engaging in conduct that made it excessively difficult for the plaintiffs to provide mortgage payments to the defendant. More particularly, Defendant BAC engaged in acts including, but not limited to:

    a.    Providing the plaintiffs with inaccurate information about how the plaintiffs could make mortgage payments;

    b.   Refusing to accept the plaintiffs' mortgage payments; and

    c.   Falsely claiming that the 2008 Loan Modification Agreement between Craig Barber and the Wilshire was void.

82.    Consequently, the plaintiffs have been unable to make timely mortgage payments to the defendants causing financial harm.

83.    Plaintiffs have been damaged by the wrongful conduct of the defendants.

**WHEREFORE**, Plaintiffs Barbers respectfully requests this honorable court grant their relief as follows:

    a.   Assume jurisdiction of this case;

    b.   Declare that Defendant BAC violated the provisions of Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* as set forth herein; and award the plaintiffs actual damages and statutory damages in the amount of $1,000 for violations of the Act, pursuant to 15 U.S.C. § 1692k; and

    c.   Declare that Defendant BAC violated the Deceptive Practices Act, Gen. Bus. Law § 349(h); enjoin the defendant from committing any future violations of the Act; and award the plaintiffs against the defendant actual damages or statutory damages whichever is greater; and

    d.   Declare that Defendant BAC committed a prima facie tort against the plaintiffs and award them special damages against Defendant BAC; and

    e.   Declare that Defendant BAC's breach of contract, violations of FDCPA, and tortuous conduct as set forth herein is of such wanton dishonesty as to imply a criminal indifference to civil obligations and award plaintiffs punitive damages

against the defendant; and

f.     Declare that Defendant BAC breached its duty to act in good faith and award the

plaintiffs actual damages and punitive damages, against the defendant; and

g.     Declare the 2008 Loan Modification Agreement between Plaintiff Craig Barber

and Wilshire to be valid and enjoin the defendant from committing any future

breach of contract; and

h.     Award the plaintiffs costs and reasonable attorney fees pursuant to Fair Debt

Collection Practices Act, 15 U.S.C. § 1692k; and the Deceptive Practices Act,

Gen. Bus. Law § 349(f) against the defendant; and

i.     Grant the plaintiffs any and all other relief this court may deem just and proper.

Respectfully Submitted,

Empire Justice Center
1 West Main Street, Suite 200
Rochester, NY 14614
Telephone:  (585) 454-4060


By:  /s/ Persis S. Yu_____
Persis S. Yu, Esq.
Peter O'Brian Dellinger, Esq.
Attorney for Plaintiff
psyu@empirejustice.org


Date: July 21, 2010




<u>JURY DEMAND</u>

Plaintiff requests a trial by jury in this matter.

- 16 -

# Exhibit A

 **.Wilshire**

**Wilshire Credit Corporation**

Payments
P.O. Box 105344; Atlanta, GA 30348-5344
or P.O. Box 7195; Pasadena, CA 91109-7195

Correspondence
P.O. Box 8517; Portland, OR 97207-8517

Phone
888.502.0100

Fax
503.946.3849

Website
https://www.wcc.ml.com

June 26, 2008

L506

Craig Barber
57 Agar Ave
Henrietta, NY 14467



RE: Loan No.: 966077
Property: 57 Agar Ave
Henrietta, NY 14467

Wilshire Credit Corporation is the servicer of the above-referenced loan. Enclosed, you will find a Loan Modification Agreement ("Agreement"). Refer to the Agreement for your first payment date and payment amount.

Please sign the Agreement and retain a copy for your records. Return the executed Agreement with the initial payment amount of $0.00 in the overnight envelope provided. If we do not receive all of the documents referenced above within 15 business days from the date of this letter, we may not accept the Agreement and it will be considered null and void. We are not obligated to renew this offer.

All loan payments should be made payable to Wilshire Credit Corporation and your loan number should be written on the payment.

If you have any questions, please contact your Loan Workout Officer at our toll-free number below.

Sincerely,

Loan Workout Department
888.313.7538
Wilshire Credit Corporation

Enclosure(s)

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE http://www.ago.state.co.us/cadc/cadcmain.cfm. NEW YORK CITY: License 1032551. NORTH CAROLINA: Permit 3840. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Wilshire Credit Corporation is licensed to do business at 14523 S.W. Millikan Way, Beaverton, OR. Wilshire's office hours are Monday – Friday 6:00 am to 5:00 pm Pacific time, holidays excluded.

# LOAN MODIFICATION AGREEMENT

Loan No.:    966077            Custodian:    H
Borrower(s):  Craig Barber       Inv. No.:     10024617
Property:    57 Agar Ave
              Henrietta, NY 14467

This Loan Modification Agreement ("Agreement") is made this 26th day of June, 2008 between Wilshire Credit Corporation ("Wilshire") as servicer for the owner of the above loan, and Craig Barber ("Borrower(s)").

## FACTS

Wilshire is the servicer of the above Loan arising from a promissory note in the original principal amount of $86,250.00 secured by a deed of trust or mortgage on the above Property. The amount of principal and interest owing on this Loan as of 7/1/2008 is $95,019.18.

Borrower(s) are in default under the Note and Deed of Trust/Mortgage.

## AGREEMENT

For good and valuable consideration, the Borrower(s) and Wilshire agree as follows:

1.     The above Facts are true.

2.     The term "Note" includes the original note and any riders, renewals, extensions, modifications and loan adjustments thereof. The term "Deed of Trust/Mortgage" includes the deed of trust or mortgage, together with any riders, addendums, modifications, amendments, or adjustments thereto. The term "Maturity Date" means the original maturity date specified in the Note on which the Loan is to be paid in full, unless such date is changed in this Agreement.

3.     The Note is hereby modified as follows:

## DEBT FORGIVENESS

The amount of the current debt is hereby reduced by $18,816.31. Therefore the amount of principal and interest now owing is $84,582.28. There may be additional amounts owed for reimbursement of advances and for other charges.

## INTEREST RATE ADJUSTMENT

Effective 7/1/2008, the interest rate on the principal amount of the Note shall be 6% per annum until the Maturity Date of the Note.

WCC:M9P:MOD 01 – as of 4-11-2008                1

PAYMENT

In addition to the principal and interest obligation, Borrower(s) are required to make monthly escrow payments of $361.39. Borrower(s) therefore will pay this Note in regular monthly payments of $893.86 until 12/1/2034 ("Maturity Date"). Such installments shall be due and payable on the 1st day of each month beginning 8/1/2008. The escrow portion of the monthly payment is subject to change due to increases or decreases in taxes and/or insurance premiums, and the monthly payment above may be changed by Wilshire to reflect such increase or decrease.

4.      All amounts remaining due under the Note and Deed of Trust/Mortgage, if any, after the monthly payments are made, shall be due and payable on the Maturity Date.

5.      Except for the modifications above, the Note and the Deed of Trust/Mortgage shall remain unchanged and the Borrower(s) ratify the Note and Deed of Trust/Mortgage as modified by this Agreement. However, if the Note may be assumed by another person, the terms of this Loan Modification Agreement are not assumable unless required by law.

6.      Borrower(s) agree to pay the Note according to the terms thereof as modified by this Agreement and to perform all of the acts to be performed by the Borrower(s) under the Deed of Trust/Mortgage. Borrower(s) also agree that upon any default under the Note or Deed of Trust/Mortgage as modified by this Agreement, the owner of the Note, without waiver of any other remedies, may void this Agreement, in which event all terms and conditions of the original Note will apply. Without limitation, the owner may continue with any pending collection proceedings without additional notice to the Borrower(s).

7.      If the Borrower(s) acquired title to the Property after the Deed of Trust/Mortgage was in effect, Borrower(s) hereby agree to perform each and all of the obligations and covenants of the Note and Deed of Trust/Mortgage as modified by this Agreement to the same extent and with the same effect as if the Borrower(s) originally had executed all of these documents.

8.      If Borrower(s) received a discharge of the Loan debt in a bankruptcy proceeding and the debt has not been reaffirmed in bankruptcy court, Borrower(s) are not personally liable for the debt, the Loan is non-recourse, and recovery will be limited to the collateral Property.

9.      As consideration for the modification made herein, Borrower(s), on behalf of themselves, their heirs, executors, administrators and assigns, hereby, jointly and severally, knowingly and voluntarily, release, discharge and covenant not to sue Wilshire, any servicer of the loan, any owner(s) of the Loan, and any of their predecessors, successors and shareholders from any and all claims, demands, liabilities, defenses, setoffs, counterclaims, actions and causes of action of whatsoever kind or nature, whether known or unknown, whether legal or equitable, related or connected in any manner to the Note or Deed of Trust/Mortgage, which the Borrower(s) have or may have through the date of this Agreement.

If applicable, Borrower(s) voluntarily waive the provision of California Civil Code Section 1542, and any other provision or statute of like effect, which provides: *"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if know by him or her must have materially affected his or her settlement with the debtor."*

Borrower(s) warrant that they have read and understand the aforesaid Section 1542 and they have had the opportunity to consult with and be advised by counsel regarding its meaning and effect and they voluntarily waive its provisions and any other provisions or statute of like effect.

10.    If any provision of this Agreement is determined under applicable law to be unenforceable, such provision shall be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

11.    Any copy of this Agreement shall be considered an original.

BORROWER(S)

By: _Cy Bzl_
Name: Craig Barber
Date: _7-16-08_

By: _____
Name: _____
Date: _____

WILSHIRE CREDIT CORPORATION

By: _____
Name: _____

Wilshire Credit Corporation
14523 SW Millikan Way, Suite 200
Beaverton, Oregon 97005

**CHRIS TUFTS**
**Team Lead**

WCC:MFP:MOD.01 -- as of 4-11-2008                    3